IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| URSALA A. GARNETT, | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | Civ. No. 14-921-RGA |
| BANK OF AMERICA, | : | |
| Defendant. | : | |

Ursala A. Garnett, Newark, Delaware.  Pro Se Plaintiff.

James H. McMackin, III, Esquire, Allyson Britton DiRocco, Esquire, and Elena D. Marcuss, Esquire.  Morris James LLP, Wilmington, Delaware.  Counsel for Defendant.


**MEMORANDUM OPINION**


March $\partial$| , 2017
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

Plaintiff Ursala A. Garnett appears *pro se* and has been granted leave to proceed *in forma pauperis*. She commenced this employment discrimination action against Defendant Bank of America on July 14, 2014. (D.I. 2). The complaint alleges employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Defendant moves for summary judgment. (D.I. 26). Plaintiff opposes and asks the Court to find in her favor.[1] (D.I. 29). Briefing on the matter has been completed.

## I.    LEGAL AND FACTUAL BACKGROUND

Garnett alleges employment discrimination by reason of race in the forms of harassment, failure to promote, and retaliation that resulted in discipline and termination of her employment. (D.I. 2). On December 10, 2007, Garnett was hired by Bank of America as an Auditor II with its corporate audit team in Wilmington, Delaware. (D.I. 27 at Ex. 1 at p.18). In July 2011, Garnett was promoted to Senior Auditor I. (*Id*. at pp.23-24). When Garnett moved to a new area within corporate audit in January 2012, she began reporting to Catherine Kulp. (*Id*. at pp.24-25). Kulp reported to Carol Apel. (*Id*. at p.26). Garnett testified that the audit job was "really not what [she] want[ed] to do," and she told Kulp the job was "not really [her] thing." (*Id*. at p.92). Garnett testified that the position was not what she wanted because of the stress involved and that she "actually hated the job." (*Id*. at pp.92-93).

---

[1]Given Garnett's request, I will regard her filing as a cross-motion for summary judgment. On October 21, 2014, Garnett submitted a sur-reply without leave of court. (D.I. 33). It will be considered given her *pro se* status.

Kulp met with Garnett on August 2, 2012 for her mid-year performance review. (*Id.* at Ex. 1 at p.30; Ex. 2 at ¶ 4). Kulp gave Garnett overall ratings of "meets expectations" in the two categories of performance ratings. (*Id.* at Ex. 1 at pp.69-74; Ex. 2 at ¶ 4). Garnett had received the same ratings in her 2011 year-end performance review. (*Id.* at Ex. 2 at ¶ 5). The review addressed areas that needed improvement and concerns raised by Garnett's co-workers regarding Garnett's distracting humming and singing out loud in the office. (*Id.* at Ex. 1 at pp.30-31, 74-76; Ex. 2 at ¶¶ 4, 6). Garnett's previous manager, Susan Young, had spoken to Garnett about the same thing. (*Id.* at Ex. 1 at pp.31-32; Ex. 2 at ¶ 6). Garnett told Kulp she thought a lot of the things that were happening were based upon her race. (*Id.* at Ex. 1 at p.33; Ex. 2 at ¶ 6).

On or about August 6, 2012, Garnett used the services of Bank of America's Advice and Counsel, which was a group of human resources professionals available to associates for consultation. (D.I. 27 at Ex. 1 at pp.48-51, 57-58; Ex. 1 at Dep. Ex. 1; D.I. 33 at Ex. 9). Garnett called Advice and Counsel's phone center and stated that she believed complaints about her singing were racially motivated. (D.I. 27 at Ex. 1 at p.49). Advice and Counsel asked for the bases of Garnett's belief. She provided it with a "List of Concerns," which claimed she was denied a promotion based upon accusations that her humming disrupted the work environment; Garnett did not believe the humming had anything to do with her overall performance. (D.I. 27 at Ex. 1 at pp.48-51, 57-58; Ex. 1 at Dep. Ex. 1; D.I. 33 at Ex. 9). The "List of Concerns" speaks to unfair treatment and "being singled out," but does not mention race. (D.I. 27 at Ex. 1 at Dep. Ex. 1).

2

Garnett also believed race was a factor when (1) she was not included on the list of individuals moving with her team to another building, and (2) immediate action was not taken after she complained of the theft of items from her desk. (*Id.* at Ex. 1 at pp.49-50; Ex. 1 at Dep. Ex. 1 at ¶¶ 4, 5). Lisa DiStefano coordinated the move. (*Id.* at Ex. 1 at p.50). Garnett was approved to work from home and, at the time, was working remotely. (*Id.* at Ex. 1 at pp. 40, 51). When Garnett discovered that her name was not on the actual move list, she called DiStefano. (*Id.* at p.51). DiStefano told Garnett that she did not realize that Garnett was not on the list. (*Id.*). Garnett's "List of Concerns" explains that DiStefano's information was not accurate; when Garnett expressed her concern, a "rush order" was placed to have her assigned to an area. (D.I. 27 at Ex. 1 at Dep. Ex 1 at ¶ 4). Garnett complained that she was placed in a space that was not comparable to those assigned to her teammates. (*Id.*).

Garnett testified that in preparation for the move to another building, she packed up her things only to discover upon her return from vacation that some items were stolen. (*Id.* at Ex. 1 at pp. 33-34). Garnett complained to DiStefano, but she took no action. (D.I. 27 at Ex. 1 at Dep. Ex 1 at ¶ 5). Garnett's "List of Concerns" explains that when another associate complained of stolen items, "all of a sudden" DiStefano completed a report and contacted security. (*Id.*). Garnett was not reimbursed for her stolen items, and testified that a white person "got their money back." (*Id.* at Ex. 1 at pp. 36-38).

Garnett testified that she thought she deserved in mid-2012 to be promoted to Senior Auditor II but, at the time of her deposition, she was not fully aware of that position's job requirements. (*Id.* at Ex. 1 at p.60). Garnett did not know how the

3

decision was made to promote an employee from Senior Auditor I to Senior Auditor II, and assumed the decision was made by the manager and the audit director. (*Id*. at Ex. 1 at p.60). She believed that she should have been promoted based upon the level of what she had performed, the additional tasks she accepted, and her coaching of other senior auditors. (*Id*. at Ex. 1 at p.61).

According to Kulp, a Senior Auditor II is expected to perform excellent individual audit work, work independently, and lead others performing audit work. (*Id*. at Ex. 2 at ¶ 8). Generally, Bank of America does not promote an associate from Senior Auditor I to Senior Auditor II until the associate has been rated "exceeds expectations" in both overall performance categories on their year-end performance review for at least a year, if not two. (*Id*.). As of mid-2012, Kulp believed that Garnett's performance was not at the level of a Senior Auditor II. (*Id*.).

On January 23, 2013, Kulp met with Garnett for her 2012 year-end performance review. (*Id*. at Ex. 2 at ¶ 9). Kulp rated Garnett's job performance as "meets expectations" in both categories overall, and identified areas for Garnett to improve her performance. (*Id*. at Ex. 1 at pp.96-98; Ex. 1 at Dep. Ex. 4; Ex. 2 at ¶ 9). During the review, Kulp addressed additional complaints that she had received about Garnett singing and humming in the office and Garnett's interactions with her co-workers. (*Id*. at Ex. 1 at pp.100-01; Ex. 2 at ¶ 10). According to Kulp, Garnett became upset, claimed that what was reported were lies, and indicated that she did not wish to discuss the issues any further. (*Id*. at Ex. 1 at pp.101-03; Ex. 2 at ¶ 10). Garnett told Kulp that she believed there was a vendetta against her and a racial issue in the group, but, according to Kulp, Garnett did not provide her with information that indicated race had

4

anything to do with it. (*Id*. at Ex. 1 at p.102; Ex. 2 at ¶ 10).  Garnett told Kulp that she was "done" with her management team and that she wanted a mediator present during any further discussions between the two. (*Id*. at Ex. 1 at pp.103-06, 118; Ex. 2 at ¶ 10).

On January 31, 2013, Kulp verbally warned Garnett about her workplace behavior, including her behavior towards fellow employees and her behavior during her performance review. (*Id*. at Ex. 1 at pp.124-28; Ex. 2 at ¶ 11).  Audit director Cathy Rohrer participated in the meeting due to Garnett's request that someone else be present for further discussions on the issue. (*Id*.).  On or about February 6, 2013, Garnett complained to Advice and Counsel about her 2012 year-end performance review and the fact that she was not promoted. (*Id*. at Ex. 1 at pp.117-18, 130-31; Ex. 1 at Dep. Ex. 6).

During the first quarter of 2013, Garnett worked on an audit. (*Id*. at Ex. 1 at pp.145-49; Ex. 1 at Dep. Ex. 11; Ex. 2 at ¶ 12).  After completion of the audit, auditor-in-charge Cesar Perez evaluated Garnett's performance on the audit and rated her as "does not meet expectations" in the area of testing and workpaper documentation. (*Id*. at Ex. 1 at ¶ 12).  Kulp first conferred with Advice and Counsel; then, on May 2, 2013, she verbally warned Garnett about her job performance and the need to improve her execution of the technology audit test programs and workpaper documentation. (*Id*. at Ex. 2 at ¶¶ 13-14).  Following the meeting, Kulp continued to work with Garnett on an action plan for improving her job performance with action items tied to the audit she was then working on with auditor-in-charge Maureen Flynn. (*Id*. at Ex. 1 at pp.149-56; Ex. 1 at Dep. Ex. 13; Ex. 2 at ¶ 14).  Throughout that audit, Kulp coached Garnett on audit processes during their weekly one-on-one meetings. (*Id*. at Ex. 2 at ¶ 14).

According to Kulp, Garnett's performance on the audit with Flynn was not at an acceptable level as Garnett continued to demonstrate a fundamental lack of understanding of basic technology audit principles. (*Id.* at Ex. 2 at ¶ 15). Garnett's performance on the audit was rated "does not meet expectations" in both overall performance categories. (*Id.* at Ex. 1 at pp.157-58; Ex. 2 at ¶ 15; Ex. 2 at Ex. A). On July 12, 2013, Garnett received a written warning from Kulp for Garnett's continued failure to meet performance expectations. (*Id.* at Ex. 1 at pp.159-60; Ex. 1 at Dep. Ex. 15; Ex. 2 at ¶ 16). Kulp put together another action plan at Garnett's request and gave it to Garnett on July 17, 2013. (D.I. 33 at pp.36-37).

According to Kulp, she continued to work closely with Garnett to try to improve Garnett's performance though one-on-one meetings and action plans, but Garnett's audit performance did not improve and she was not meeting deadlines. (D.I. 27 at Ex. 2 at ¶ 17). On August 8, 2013, Kulp conducted Garnett's mid-year performance review and rated Garnett's performance as "does not meet expectations" in both the goals and competencies categories overall. (*Id.* at Ex. 1 at pp.167-69; Ex. 1 at Dep. Ex. 18; Ex. 2 at ¶ 18). Garnett did not agree that she was not performing well. (*Id.* at Ex. 2 at ¶ 18). On August 20, 2013, Kulp met with Garnett and gave her a final written warning regarding her job performance. (*Id.* at Ex. 1 at pp.170-72; Ex. 1 at Dep. Ex. 19; Ex. 2 at ¶ 19). Audit director Rohrer was present and audit director Apel participated via telephone. (*Id.*).

In August and September 2013, Garnett worked on a project under senior audit manager Pamela Fischer. (*Id.* at Ex. 2 at ¶ 20). According to Kulp, Garnett's work reflected the same lack of understanding of basic audit responsibilities and skills and

6

work product issues, including grammatical and spelling errors that Kulp had been addressing with Garnett. (*Id.*). Garnett's work product did not reflect any effort or desire to improve; after conferring with the Human Resources Manager, Audit leadership, and Advice and Counsel, the decision was made to terminate Garnett's employment. (*Id.* at Ex. 2 at ¶ 21). On October 4, 2013, Kulp terminated Garnett's employment with Bank of America. (*Id.*).

Garnett testified that Kulp never said anything that indicated that she harbored any racially discriminatory animus against Garnett. (*Id.* at Ex. 1 at pp.119, 224). Garnett described Kulp as verbally and emotionally abusive. (*Id.*).

On February 21, 2013, Garnett presented her discrimination complaint to the Delaware Department of Labor ("DDOL") and, on March 5, 2013, a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation because she was denied a promotion to Senior Auditor II in January 2013, not included in her team's move to a new location, and her reports of theft were ignored. (*Id.* at Ex. 1 at p.136; Ex. 1 at Dep. Ex. 7). Garnett was represented by counsel during at least some portion of the administrative proceedings. (*Id.* at Ex. 1 at Dep. Ex. 9, third page; D.I. 33, Exh. 2)

Garnett testified that she is claiming that the failure to promote her to Senior Auditor II was discriminatory, not retaliatory. (D.I. 27 at Ex. 1 at pp.260-61). She claims that the verbal warnings, written warnings, action plans, disciplinary actions, and termination were in retaliation for filing the first claim. (*Id.* at pp.260-62). Garnett presented a second discrimination complaint to the DDOL on September 12, 2013, and a charge of discrimination was filed with the EEOC on October 17, 2013 alleging

retaliation when she was harassed, disciplined, and discharged. (*Id.* at Ex. 1 at pp.180-82; Ex. 1 at Dep. Ex. 22). Garnett testified that Bank of America had no knowledge of the second charge prior to her termination. (*Id.* at Ex. 1 at p.181).

## II.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Id.* Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

8

With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Bank of America moves for summary judgment on the grounds that Garnett cannot: (1) establish a *prima facie* case of race discrimination as to her failure to promote, employment termination, or retaliation claims; and (2) prove that Bank of America's legitimate, non-discriminatory reasons for its actions are a pretext for discrimination or retaliation. Garnett argues that her claim speaks to promotion, retaliation, harassment, and creating a hostile work environment.[2] (D.I. 29). She asks the Court to find in her favor and award damages for discrimination and retaliation. (*Id.*)

## III.  DISCUSSION

### A.  Hostile Work Environment

Garnett contends harassment directed towards her resulted in a hostile work environment. To make a *prima facie* case of hostile work environment, a plaintiff must establish the following five elements: (1) "she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination

[2]In her response, Garnett also refers to religious discrimination, stating that her religious beliefs were questioned. (D.I. 29 at p.14). The Court does not consider this claim given that it is raised for the first time in Garnett's responsive brief. *See generally Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) (plaintiff may not amend complaint through arguments in brief in opposition to a motion for summary judgment).

9

detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same race in [her] position;" and (5) there is a basis for employer liability. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996). Not all workplace conduct that may be described as harassment rises to the level of a hostile work environment. *Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18, 25 (3d Cir. 2006).

"Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 271 (internal quotation marks omitted); *see also Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (noting that the standard for judging hostility under Title VII must be sufficiently demanding so that the statute does not become "a general civility code"). Rather, the plaintiff must show that she was subjected to continuous and repeated acts of harassment. *See Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir. 1990).

Garnett claims that she was subjected to a hostile work environment because: (1) she was denied a promotion when her co-workers complained about her humming and singing; (2) Kulp spoke to her in an insensitive manner; (3) her name was omitted

10

from the team member list when the team was moving to another building; and (4) immediate action was not taken after she complained of the theft of items from her desk.

Garnett testified that Kulp never said anything to her that was racially offensive or that indicated Kulp harbored a racial animus against Garnett. Instead, Garnett found Kulp verbally abusive. Construing this in the light most favorable to Garnett, the non-moving party, and even if Kulp's conduct may have been inappropriate work behavior, it is not indicative of race discrimination. *See Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998) (Title VII is not a "general civility code."); *see also Barber v. CSX Distrib. Serv.*, 68 F.3d 694, 702 (3d Cir. 1995) ("general complaint of unfair treatment does not translate into a charge of illegal age discrimination").

Further, the evidence of record does not support a claim that race was a factor in failing to include Garnett's name in the list of employees who were moved to another building, or the failure to take immediate steps when Garnett complained that some of her items had been stolen. Rather, it appears that Garnett's name was not on the moving list due to an oversight, and steps were taken to remedy the matter once Garnett raised the issue. With regard to the theft issue, no reasonable person could find the issue particularly severe, particularly in light of the fact that again, steps were taken to remedy the matter, albeit not in as timely a fashion as Garnett would have liked.

Finally, Garnett relies upon her subjective beliefs to support her position that she was subjected to a hostile work environment, when after her co-workers complained of her humming and singing, she did not receive a promotion. Those subjective beliefs,

11

however, are insufficient to create a genuine issue of material fact. *See Fiorentini v. William Penn Sch. Dist.*, 2016 WL 7338428 (3d Cir. Dec. 16, 2016).

After viewing the record in the light most favorable to Garnett, and considering the totality of the circumstances, the Court concludes that no reasonable jury could find that the claimed harassment was based on race or was sufficiently severe or pervasive that it created a hostile working environment.

For the above reasons, the Court will deny Garnett's motion for summary judgment and grant Bank of America's motion for summary judgment on the issue of a hostile work environment.

## B. Race Discrimination

With regard to the race discrimination claim, Bank of America argues that summary judgment is appropriate on the grounds that Garnett has failed to set forth a *prima facie* case of race discrimination and, in the alternative, the claims fail based upon legitimate non-discriminatory reasons.

### 1. Applicable Law

Absent evidence of direct discriminatory intent, the Court applies the familiar burden shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of making a *prima facie* showing of discrimination. *See id.* at 802.

---

[3]"Direct evidence" is evidence sufficient to allow the jury to find that the "decisionmakers placed substantial negative reliance on [race] in reaching their decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring in the judgment).

12

To establish a *prima facie* case of race discrimination, Garnett must prove that: (1) she is a member of a protected class; (2) she is qualified for the position at issue; (3) she suffered an adverse action relative to that position; and (4) under circumstances that give rise to an inference of unlawful discrimination. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410-11 (3d Cir. 1999). "The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because their race." *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003).

If Garnett succeeds in establishing her *prima facie* case, the burden shifts to Bank of America to proffer "legitimate non- discriminatory" reasons for its actions. *See Reeves*, 530 U.S. at 142. If the defendant meets "its relatively light burden by articulating a legitimate reason for the unfavorable employment decision," the burden of production shifts back to the plaintiff to present evidence from which a reasonable factfinder could infer that the employer's proffered reasons are pretextual. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

To defeat summary judgment at the pretext stage, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. To survive summary judgment, it is not enough for a plaintiff to simply declare that the reasons proffered by the employer are pretextual. *See id.* at 764-65. The plaintiff must point to evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action[s] that a reasonable factfinder

13

could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Id.* at 765 (internal citation, alterations, and quotation marks omitted).

### 2. Failure to Promote

Garnett claims that the failure to promote her to Senior Auditor II was discriminatory.

#### a. *Prima Facie* Case

Garnett has established that she is a member of a protected class and that she suffered an adverse action. However, even when construing the facts in the light most favorable to Garnett, she has failed to make a *prima facie* case for other two elements needed. She has not shown that she was qualified for the position to which she sought promotion. She has not shown circumstances suggesting an inference of unlawful discrimination.

With regard to the "qualified" element, Garnett testified that she did not know the qualifications for the Senior Auditor II position, how the decision for the promotion was made, or who made the decision. She nonetheless believed that she should have been promoted because of her performance, the additional tasks she accepted, and her coaching of other senior auditors. It is uncontroverted, however, that a Senior Auditor I is not promoted to a Senior Auditor II, until the Senior Auditor I has been rated "exceeds expectations" in both of the two overall categories on year-end performance reviews for at least a year. Garnett was rated as "meets expectations." There is no evidence that she was ever rated as "exceeds expectations." Further, Garnett's supervisor did not consider Garnett ready to perform the work expected of a Senior Auditor II.

14

With regard to the "suggestive circumstances" element, one possibility is for Plaintiff to compare her treatment to that of an employee outside her protected class. To rely on this sort of comparison, she must show that she and the comparator employee(s) are similarly situated in all relevant respects. *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009). Whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case. *Id.* The relevant factors may include some of the above, in addition to evidence that the employee "possessed analogous attributes, experience, education, and qualifications relevant to the positions sought." *Id.* (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)). Garnett is not required to show that she is identical to the comparator in each relevant factor, "but [s]he must show substantial similarity." *Id.* (citing *Radue*, 219 F.3d at 618). Accordingly, in order to establish an appropriate class of similarly situated comparators, Garnett must identify employees who share characteristics that are relevant to the facts of this case.

To support this prong, Garnett lists a number of discrimination cases and provides articles involving Bank of America or Merrill Lynch. (D.I. 29 at pp.4, 17-21). There is nothing in the record that indicates the list of cases involves comparators with whom Garnett is substantial similar. Garnett names as a comparator Cynthia Harris, an African American, who left the employ of Bank of America. (D.I. 29 at p.10; D.I. 31 at Ex. 1 at pp.115-17). Harris held the position of Senior Auditor II, while Garnett held the position of Senior Auditor I. Yet Garnett argues that she and Harris experienced the same treatment. (D.I. 20 at p. 10). Garnett testified that Harris "got singled out," but she did not "know all the specifics." (D.I. 31 at Ex. 1 at p.116).

15

Harris and the individuals listed in the cases and newspaper articles to whom

Garnett compares herself as having been treated more favorably are not similarly

situated. With regard to Harris, she had a different job title and appears to have

reported to Apel while Garnett reported to Kulp. In addition, Garnett could not provide

any other specifics with regard to Harris as a comparator. Nor do the list of cases and

newspaper articles provide relevant comparator evidence.

Given the absence of a showing that Garnett was qualified to be a Senior Auditor

II, and the paucity of comparator evidence, the Court finds that Garnett has failed to

meet her burden to establish a *prima facie* case of race discrimination.

### b.      Pretext-Plus Analysis

In the alternative, I assume for the sake of argument that Garnett has

established a *prima facie* case of race discrimination in the failure to promote.

Nevertheless, even when construing the evidence in the light most favorable to Garnett,

she has provided no evidence from which a fact-finder could either disbelieve Bank of

America's articulated reasons, or believe that discriminatory reasons were more likely

than not the cause of the employment actions.

Garnett did not meet the required rating for promotion to Senior Auditor II. She

was rated as "meets expectations," rather than "exceeds expectations," as was

necessary for the promotion. The record evidence is undisputed that this was a

requirement for promotion. Further, Garnett's supervisor did not find Garnett ready to

perform the work expected of a Senior Auditor II, and this evidence is not disputed

either.

Thus, I must grant summary judgment for the Bank of America on the "failure to promote" claim of race discrimination.

### 3.   Termination

Garnett claims that her termination was discriminatory.

#### a.   *Prima Facie* Case

Garnett has established that she is a member of a protected class and that she suffered an adverse action. As I note below, there is a disputed material fact as to whether she was qualified for the position she held. However, even when construing the facts in the light most favorable to Garnett, she has failed to make a *prima facie* case for the other required element. She has not shown circumstances suggesting an inference of unlawful discrimination.

Garnett disputes that she was not performing well at her job. Conversely, Garnett received negative performance reviews from multiple Bank of America employee, including two audit team leaders, Perez and Flynn, who do not appear to have been part of her management structure. While the evidence in the record that Garnett was performing satisfactorily appears to be essentially her self-evaluation, the Court is not prepared to say at this point, given the necessity of construing the facts in the light most favorable to Garnett as the non-moving party, that there is not a dispute of material fact as to the quality of her work as a Senior Auditor I.

Garnett's "termination" claim falters in regard to the last element. That is, the evidence of record does not give rise to an inference of race discrimination. One possibility for establishing an inference of discrimination would consist of comparison with others similarly situated. For someone to be similarly situated, relevant factors

17

might include whether the comparators: "(1) had the same job description, (2) were subject to the same standards, (3) were subject to the same supervisor, and (4) had comparable experience, education, and other qualifications." *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 923 (7th Cir. 2007). There is no evidence that would support an analysis of any of these factors. There is no evidence of record of comparators that were treated more favorably than Garnett under anything approaching similar circumstances.

Given the absence of any circumstances suggesting that Garnett's termination was the product of race discrimination, the Court concludes that Garnett has failed to meet her burden to establish a *prima facie* case of race discrimination.

### b.    Pretext-Plus Analysis

In the alternative, I assume for the sake of argument that Garnett has established a *prima facie* case of race discrimination in her termination. Nevertheless, even when construing the evidence in the light most favorable to Garnett, she has provided no evidence from which a fact-finder could either disbelieve Bank of America's articulated reasons, or believe that discriminatory reasons were more likely than not the cause of the employment actions.

The record evidence is that Garnett received multiple warnings about her job performance. She was given opportunities to improve her job performance, that included weekly coaching meetings and action plans, yet her performance did not improve. The record reflects that in addition to Kulp, who assessed Garnett's job performance as "does not meet expectations," "auditor-in-charge" Perez and "auditor-in-charge" Flynn also found Garnett's performance lacking. Garnett's employment was

ultimately terminated after Kulp concluded that Garnett's work product did not reflect the effort or desire to improve.

Although Garnett believes that she was performing well, Garnett has failed to show that Bank of America's evidence of her performance deficiencies constitutes a pretext for discrimination. *See Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) (The employee's "view of [her] performance is not at issue; what matters is the perception of the decision maker. . . . The fact that an employee disagrees with an employer's evaluation of [her] does not prove pretext."), *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). Garnett may not rely upon her subjective beliefs to support her position that she was subjected to race discrimination when she was terminated.

Nothing before the Court contradicts Bank of America's proffered reasons for the actions it took. Nor are its proffered reasons for its actions weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003). As there is no genuine dispute on the dispositive legal issue of whether Bank of America had discriminatory motives, the Court will grant Bank of America's motion for summary judgment and will deny Garnett's motion for summary judgment as to the issue of her termination constituting employment discrimination by reason of race.

## C.    Retaliation

To establish a *prima facie* claim of unlawful retaliation, Garnett is required to show that: "(1) she engaged in a [protected activity]; (2) [Bank of America] took an

19

adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). Garnett "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). The Court examines the challenged conduct "from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.* at 71.

With respect to the causation prong, the Court considers whether a reasonable jury could link the employer's conduct to retaliatory animus. *See Jensen v. Potter*, 435 F.3d 444, 449 n.2 (3d Cir. 2006) (explaining that "[t]he ultimate question in any retaliation case is an intent to retaliate *vel non*"). In assessing this, the Court considers the "temporal proximity" between Garnett's protected activity and Bank of America's allegedly retaliatory response, and "the existence of a pattern of antagonism in the intervening period." *Id.* at 450. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist.*, 532 U.S. at 273-74 (citing the insufficient three month period of *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)); *see also Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 759-60 (3d Cir. 2004) (temporal proximity of two months between protected activity and an adverse employment action was not unduly suggestive).

20

If a *prima facie* case is established, the burden of production shifts to the

employer to present a legitimate, non-discriminatory reason for its actions. *Daniels v.*

*School Dist. of Phila.*, 776 F. 3d 181, 193 (3d Cir. 2015). If such a reason is offered,

the burden shifts back to the plaintiff to demonstrate that the reason was merely pretext

"and that retaliation was the real reason for the adverse employment action." *Id.*

Although the burden of production shifts, "the plaintiff has the ultimate burden of

persuasion at all times." *Id.*

Garnett engaged in protected activity and Bank of America took adverse

employment actions against her in the form of verbal and written warnings and,

ultimately, the termination of her employment. The record reflects that Garnett

engaged in protected activity when she internally complained of race discrimination in

August 2012, again complained internally in early February 2013, presented a

discrimination complaint to the DDOL in mid-February 2013, and filed a charge of

discrimination in early March 2013.[4] Garnett does not claim that the failure to promote

her to Senior Auditor II was retaliatory. She testified that the verbal and written

warnings, action plans, disciplinary actions, and termination all were in retaliation after

she began complaining of discrimination.

Turning to the issue of a causal connection between the protected activity and

the adverse action taken, the record reflects that Garnett verbally complained of race

---

[4]Garnett presented a second discrimination complaint to the DDOL on
September 12, 2013, and a charge of discrimination was filed with the EEOC on
October 17, 2013. Garnett does not base her retaliation claim upon the filing of the
second charge, as the Bank of America had no knowledge of the second charge prior
to her termination. (D.I. 27 at Ex. 1 at p.181).

21

discrimination in early August 2012 and received a year-end evaluation that she did not
agree with on January 23, 2013, and a verbal warning regarding her workplace
behavior on January 31, 2013, both five months following her initial August 2012
complaint. Garnett received another verbal warning on May 2, 2013, approximately two
months after she filed her charge of discrimination with the EEOC on March 5, 2013.
Garnett then received a written warning on July 12, 2013, some five months after the
March 5, 2013 charge of discrimination, followed by a mid-year performance review in
early August with which Garnett did not agree. Garnett received a final written warning
on August 20, 2013, and her employment was terminated on October 4, 2013.

Here, even when construing these facts in the light most favorable to Garnett,
she has failed to set forth a *prima facie* case of retaliation, particularly given the fact
that the temporal proximity of Garnett's complaints to the acts of Bank of America are
not so close as to be unduly suggestive. Nor has Garnett presented evidence
suggestive of racial animus by Bank of America or its managers.

In the alternative, even had Garnett established a *prima facie* case of retaliation,
the evidence of record does not support a finding that Bank of America's legitimate,
non-discriminatory reasons for its adverse actions were pretext for retaliation. Bank of
America proffered legitimate, non-retaliatory reasons for the actions it took. Garnett
received multiple warnings, both verbal and written, regarding her job performance and
what was expected from her to meet performance expectations in her position as
Senior Auditor I. Care was taken to work with Garnett to improve her performance,
including coaching Garnett during weekly one-on-one meetings. Garnett was warned of
the consequences should her performance fail to improve, yet she failed to improve

22

and, ultimately, her employment was terminated. Bank of America's proffered reasons for taking the employment actions it did are not weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003).

The Court finds that no reasonable jury could find for Garnett and, therefore, the Court will grant Bank of America's motion and will deny Garnett's motion for summary judgment on the retaliation issue.

## IV. CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment (D.I. 26) and will deny Plaintiff's motion for summary judgment (D.I. 29). A separate Order consistent with this Memorandum Opinion will be issued.

23